IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FRANK W., JR., | ) | |
| | ) | |
| Claimant, | ) | No. 17 CV 9091 |
| | ) | |
| v. | ) | Jeffrey T. Gilbert |
| | ) | Magistrate Judge |
| NANCY BERRYHILL, Acting | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Frank W., Jr. ("Claimant") seeks review of the final decision of Respondent Nancy Berryhill, Acting Commissioner of the Social Security Administration ("the Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 11]. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c). The parties have filed cross-motions for summary judgment [ECF Nos. 17, 25] pursuant to Federal Rule of Civil Procedure 56. For the reasons stated below, Claimant's Motion for Summary Judgment [ECF No. 17] is denied, and the Commissioner's Motion for Summary Judgment [ECF No. 25] is granted. The Commissioner's decision is affirmed.

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d)

## I. PROCEDURAL HISTORY

Claimant filed an application for DIB on May 20, 2014, alleging a disability onset date of December 31, 2008. (R. 20.) Claimant's date last insured was September 30, 2012. (R. 22.) Claimant's application was denied initially on September 8, 2014, and then upon reconsideration on March 19, 2015, after which Claimant requested an administrative hearing before an administrative law judge ("ALJ"). (*Id.*) On September 28, 2016, Claimant, represented by counsel, appeared and testified at a hearing before ALJ Edward Studzinski. (R. 20-32.) The ALJ also heard testimony from vocational expert ("VE") James Breen. (R. 20.)

On November 15, 2016, the ALJ denied Claimant's application for DIB, based on a finding that he was not disabled under the Act. (R. 20-32.) The opinion followed the five-step evaluation process required by Social Security Regulations ("SSRs").[2] 20 C.F.R. § 404.1520. Prior to step one, the ALJ noted that Claimant met the insured status requirements of the Act through September 30, 2012. (R. 20.) At step one, the ALJ found that Claimant had not engaged in any substantial gainful activity ("SGA") since the alleged onset date of December 31, 2008. (R. 22.) At step two, the ALJ found that Claimant had the severe impairments of social phobia, attention deficit hyperactivity disorder ("ADHD"), and an affective disorder. (*Id.*) At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (R. 23.)

---

[2] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). Although the Court is "not invariably bound by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

The ALJ then assessed Claimant's residual functional capacity ("RFC")[3] and concluded that Claimant was capable of performing work at all exertional levels with the following limitations:

> He is limited to working in non-hazardous environments, i.e., no driving at work, operating moving machinery, working on ladders, at unprotected heights, or around exposed flames or unguarded large bodies of water, and he should avoid concentrated exposure to unguarded hazardous machinery such as a punch press and large robotic machinery. In addition, he is further limited to simple, routine and repetitive tasks, work involving no more than simple decision-making, no more than occasional and minor changes in the work setting, and work requiring the exercise of only simple judgment. He ought not to perform self-directed work. He is further precluded from work involving direct public service, in person or over the phone, although the claimant can tolerate brief and superficial interaction with the public which is incidental to his primary job duties. He can tolerate brief and superficial interaction with co-workers and supervisors as is common in unskilled work, but is not to perform teamwork or tandem tasks.

(R. 24.) Based on this RFC, the ALJ determined at step four that Claimant could not perform any past relevant work. (R. 30.) Finally, at step five, the ALJ found that there were jobs that exist in significant numbers in the national economy that Claimant could perform. (R. 31.) The Appeals Council denied Claimant's request for review on October 16, 2017, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the district court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-107 (2000). Under such circumstances, the district court reviews the decision of the ALJ. (*Id.*) Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

3

the ALJ applied the correct legal standards in reaching his or her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support n ALJ's decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

### III. ANALYSIS

On appeal, Claimant asserts that the ALJ made four errors. First, Claimant contends that the ALJ failed to consider Claimant's Post-Traumatic Stress Disorder ("PTSD") diagnosis and the Veterans Administration's ("VA") disability rating. Second, Claimant argues that the ALJ's Paragraph B criteria assessment did not build a logical bridge between the record facts and the ALJ's conclusion. Third, Claimant asserts that the ALJ improperly assessed Claimant's subjective symptoms statement. Finally, Claimant argues that the ALJ's finding at step five, that a significant

number of jobs existed in the national economy for Claimant, was premised on flawed vocational testimony. The Court will address each argument in turn.

### A. The ALJ Properly Considered Claimant's PTSD and the VA's Disability Rating

On May 8, 2014, Dr. Jyotsana Sharma diagnosed Claimant with PTSD during a mental status evaluation at the Hines VA Medical Center. (R. 292.) Then five days later on May 13, 2014, the VA rated Claimant as 100 percent disabled. (R. 263.) Claimant's diagnosis and disability rating, however, came roughly a year and a half after his date last insured of September 30, 2012. (R. 20, 292.) The ALJ acknowledged these subsequent findings but found that the record evidence did not support a finding of disability during the relevant time period, *i.e.*, the time on or before the date last insured. (R. 29.) However, when identifying Claimant's severe impairments, the ALJ specifically stated: "While the claimant was subsequently diagnosed with post-traumatic stress disorder (PTSD), this occurred considerably after the date last insured. Whatever the specific etiology of the claimant's impairment(s), I have assessed the symptoms and limitations imposed by them in combination." (R.22.)

Claimant argues that his PTSD existed earlier and went undiagnosed and untreated until after the date last insured. [ECF No. 18], at 9. Claimant bases this argument on a note by Dr. Sharma opining that Claimant's PTSD likely dates to his return from Iraq in 2008. (R. 300.) The ALJ's reasoning for finding Claimant not disabled under the Act, however, does not rest on the ALJ's dismissal of Dr. Sharma's note. Instead, the ALJ found that Claimant's subsequent diagnosis of PTSD and the VA's finding of 100 percent disability were based on evidence that postdated Claimant's date last insured. (R. 29.) The ALJ clearly considered all of Claimant's symptoms and limitations as they existed during the relevant time period, and that analysis

reasonably included limitations that could have been attributed to Claimant's later diagnosed PTSD.

Ultimately, it is Claimant who bears the burden of providing medical records that would show a given impairment *during* the relevant time period, not after the date last insured has passed. *Denton v. Astrue*, 596 F.3d 419, 424 (7th Cir. 2010) (emphasis added). Here, the medical record is sparse during the relevant time period, including a gap in information from 2006 to 2011.

The medical records reveal that, in March 2011, Claimant began seeing Dr. Jennifer S. Mellin, a psychiatrist, at the referral of his primary care physician. (R. 1122-25.) At that time, Claimant stated that he had stopped taking his medication because it gave him headaches. (R. 1122.) He also indicated that his anxiety was worsening since he stopped taking his medication. (*Id.*) Claimant withdrew from his classes that semester but stated he planned to restart school over the summer. (R. 1123.) Dr. Mellin adjusted Claimant's medication to treat his depression and anxiety and assigned him a Global Assessment of Functioning ("GAF") score of 55-57.[4] (R. 1123-24.) In June 2011, Claimant returned to see Dr. Mellin, during which Claimant indicated he was more comfortable going out, was not depressed, was attending classes, was not feeling hopeless, and his mood was a seven out of ten. (R. 1223.) In August 2011, Claimant reported starting a new semester, stated his "depression really [wasn't] there anymore" and that he was going out more. (R. 1220.) No medication changes were made, and he was assigned a GAF score of 62. (*Id.*)

---

[4] The Global Assessment of Functioning is a system used to score the severity of psychiatric illness, http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3036670/ (last visited on October 4, 2018). According to the American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR) (4th Ed. Text Rev. 2000) at page 34, a GAF between 61 and 70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships. DSM-IV-TR (4th Ed. Text Rev. 2000) at 34. "A GAF score of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Logerman v. Astrue*, No. 11 C 383, 2011 U.S. Dist. LEXIS 125162, at *3 n.7 (N.D. Ill. Oct. 28, 2011) (citation omitted).

By October 2011, Claimant stated that his depression was "completely under control." (*Id.*) He also reported being more social, attending school full time, and being able to concentrate on his studies. *(Id.)* He rated his mood as an eight out of ten. (R. 1121.) No medication changes were made, and he was assigned a GAF score of 64. (*Id.*) In December 2011, Claimant stated that his social anxiety was under control, he was able to attend classes, and he said that "things [were] really starting to turn around." (R. 1118.) He rated his mood as an eight of ten, stating that his mood was "good, real good." (*Id.*) Dr. Mellin noted that his affect was the brightest she had ever seen. (*Id.*) No medication changes were made, and he was assigned a GAF score of 65. (R. 1119.)

Claimant again saw Dr. Mellin in March 2012, which was the last appointment before Claimant's date last insured and the expiration of the relevant time period. (R. 1115-17.) At this visit, Claimant stated that he was still attending school, would finish in August, and planned to visit his sister in California at that time. (R. 1115.) He also reported that he had not been taking his medication for a couple of months, but he was not feeling anxious or depressed. (*Id.*) He again rated his mood as an eight of ten. (*Id.*) Dr. Mellin noted that there was a risk of social anxiety and depression returning if he did not take his medications, and Claimant expressed understanding. (R. 1116.) At that time, Dr. Mellin noted that Claimant's mental status examination was normal and assigned him a GAF score of 65. (R. 1115-16.) After this visit, Claimant did not receive treatment again for over a year, and six months after his date last insured. (R. 1216.) It is not disputed that Claimant's mental condition deteriorated in March 2013, when he was hospitalized for suicidal ideation (R. 289, 441), and the evidence shows continued deterioration. (R. 300, 302, 416, 472, 485, 625.)

Claimant, however, has not pointed to any evidence *during the relevant time period* that shows a diagnosis of PTSD or that his social phobia, ADHD and affective disorder (which are the

7

severe impairments found by the ALJ) caused limitations greater than those provided in the RFC. On the contrary, as discussed herein, the limited medical records prior to September 30, 2012 show improvement during the relevant time period. The ALJ acknowledged in his opinion that he was aware of Claimant's mental condition after the relevant time period, and the ALJ, in fact, specifically discussed the medical evidence through 2015. (R. 29.) The ALJ, however, appropriately was focused on Claimant's mental status and the medical evidence prior to September 30, 2012.

The evidence reveals that in 2011 and 2012 once Claimant's medications were adjusted by Dr. Mellin, he returned to school, reported increased socialization, and stated that his depression and anxiety were well controlled. (R. 1115-1124.) There are no notes prior to the medication adjustment in May 2011 that show Claimant had experienced functional limitations because of undiagnosed and untreated PTSD. Still, the ALJ with full knowledge of both pre- and post-date last insured records limited Claimant to simple, routine, and repetitive tasks with no more than occasional and minor changes in the work setting. (R. 24.) The ALJ also precluded Claimant from work involving direct public service and limited him to brief and superficial interaction with the public, coworkers, and supervisors. (*Id.*) The ALJ stated Claimant could not perform teamwork or tandem tasks. (*Id.*)

The ALJ properly limited Claimant based on his mental health limitations during the relevant period. The Court recognizes that Claimant's condition deteriorated rapidly after the date last insured, but Claimant has not pointed to any evidence that indicates his impairments of social phobia, ADHD and affective disorder or any undiagnosed PTSD required greater functional limitations during the relevant period. In sum, Claimant has not satisfied his burden of showing

such symptoms and limitations existed prior to the date last insured based on evidence in the record before the ALJ.

Claimant next asserts that the ALJ failed to consider the VA's disability determination. In a May 2014 VA Report, Claimant was found to be 100 percent disabled as of April 8, 2013, based on the date that Claimant filed his claim for VA benefits. (R. 265.) As stated above, it is Claimant's burden to show a disabling impairment prior to his date last insured of September 30, 2012. Although Claimant's condition clearly deteriorated after September 30, 2012, if he was not disabled on or before his date last insured, he "cannot obtain benefits even if [he] is disabled now." *Martinez v. Astrue*, 630 F.3d 693, 699 (7th Cir. 2011); *Cf. with Stone v. Colvin*, 2015 WL 2265793 (N.D. Ill. 2015) (recognizing that "[c]ourts have repeatedly rejected the proposition that post-insured evidence is of no value at all").

While the ALJ did not assign significant weight to the post-date last insured evidence, the ALJ acknowledged the VA's disability determination, Claimant's diagnosis of PTSD, and his ongoing treatment for it, and the ALJ recognized that Claimant does well when he is consistent and compliant with his medication and treatment. (R. 29-30.) The ALJ, however, did not err when he assigned little weight to the post-date last insured evidence as the record presented a number of contradictory, objective medial reports and the ALJ balanced those reports against the VA's determination to determine the weight to give to the VA's findings. This is well-within the province of the ALJ to consider and weigh the evidence in the record.

In addition, the VA's finding that Claimant's PTSD had long gone untreated does not prove that his PTSD caused functional limitations beyond the ALJ's RFC during the relevant period. The ALJ properly discussed the medical record and found that Claimant attended school, lived alone, drove, dated, and reported increased socialization during this period. (R. 23, 29.) Moreover,

9

Claimant reported during the relevant time period that his depression and anxiety were well-controlled when he complied with treatment. (R. 1118, 1120, 1220.) Therefore, the ALJ did not err in limiting his analysis to the time period between Claimant's alleged onset date and his date last insured.

The Court notes that even if the ALJ had given controlling weight to the VA Report, the VA's finding of disability as of April 2013 does not contradict the ALJ's conclusion that Claimant was not disabled prior to September 30, 2012. The ALJ's determination and the VA's report addressed different time periods. Accordingly, it was reasonable for the ALJ to conclude that the VA's report and disability determination in May 2014 offered little of probative value as to Claimant's condition prior to September 30, 2012.

Finally, Claimant points to the Seventh Circuit's decision in *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015), for the proposition that if the VA pronounces an individual "totally unemployable by reason of his disability. . . [that] equates to a finding of total disability under the regulations of the Social Security Administration." [ECF No. 18], at 9. The 7th Circuit's holding in *Hall* is not controlling or even apposite in this case because the Claimant/Veteran in *Hall* was found to be "totally unemployable" by the VA, while Claimant in this case was not found to be totally unemployable. (R. 266.) In fact, in this case, the VA stated that "[s]ince there is a likelihood of improvement, the assigned evaluation is not considered permanent...." (*Id.*) The ALJ also recognized that the VA's determination does not assess whether Claimant can perform either his past work or other work that exists in significant numbers in the national economy. The ALJ reasonably assigned little weight to the VA's determination not only because there is nothing in the VA determination to indicate that Claimant is "totally unemployable," but also because the ALJ, based on the testimony of the VE, found that Claimant was in fact employable during the

relevant time period and that a number of jobs existed for Claimant in the national economy at the time of the ALJ's finding of no disability

### B. The ALJ Properly Assessed the Paragraph B Criteria

Claimant contends that the ALJ erred in evaluating the Paragraph B assessment for Claimant's mental impairments.[5] Claimant argues that the ALJ did not present any "compelling facts" regarding his finding that Claimant had only moderate difficulties in social functioning, and that the ALJ should not have limited the time frame to the relevant time period. [ECF No. 18], at 11. The Court disagrees.

At step three, the ALJ found that Claimant had a mild restriction in activities of daily living, moderate difficulties in social functioning, moderate difficulties in concentration, persistence or pace, and had experienced one to two episodes of decompensation of extended duration. (R. 23.) The ALJ clearly discussed Claimant's social functioning. The ALJ found that Claimant was able to live alone, perform personal care, do household cleaning, prepare food, shop, drive, manage funds, attend appointments, participate in group treatment, attend school, maintain friendships and have a girlfriend. (*Id.*) The ALJ also recognized that Claimant's mental status examinations generally showed intact memory and concentration during the period in question. (*Id.*)

Claimant's ability to engage in this level of social functioning supports the ALJ's finding that Claimant had moderate difficulties in this area. Moreover, the limitations identified in Paragraph B are not an RFC assessment, as Claimant implies. Rather they are used to rate the

---

[5] "Paragraph B Criteria" are defined under 20 C.F.R. Part 404, Subpt. P., App. 1 of the SSRs as follows: "To satisfy the 'paragraph B' criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintain concentration, persistence, or pace; or repeated periods of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme." Here, Claimant was not found to have any "marked" limitations, or a "marked" limitation and a period of extended decompensation. [R. 23.]

severity of mental impairments at steps two and three of the evaluation process. *See* SSR 96-8p. And, in this case, based on the objective medical evidence, there was nothing in the record to support more than mild to moderate difficulties in any of the four categories under paragraph B, including social functioning. Thus, the ALJ reasonably assessed Claimant's social functioning and did not need to include functional limitations at this step since the ALJ sufficiently explained Claimant's functional limitations in the RFC.

The ALJ also properly limited his analysis to the relevant time period between the alleged onset date and Claimant's date last insured. As discussed above, it is Claimant's burden to show that his impairments of social phobia, ADHD and affective disorder or any undiagnosed PTSD caused limitations in his functional abilities prior to September 30, 2012. While Claimant argues that Claimant's PTSD began when he returned from Iraq in 2008, the issue is not whether Claimant's PTSD began in 2008 or in 2013, but rather the nature and extent of Claimant's symptoms and functional limitations between 2008 and September 30, 2012. Claimant has not provided any support for his argument that he was severely limited by his impairments of social phobia, ADHD and affective disorder or any PTSD prior to September 30, 2012, his date last insured, and the ALJ properly limited his analysis to the relevant time period.

### C. The ALJ Did Not Err in His Assessment of Claimant's Subjective Complaints Statement

Claimant attacks the ALJ's subjective complaints analysis, stating that the ALJ improperly dismissed Claimant's subjective complaints. [ECF No. 18], at 12-13. Claimant argues that the ALJ engaged in cherry picking by relying on occasional non-compliance, old GAF scores, and an ability to drive and attend classes, while ignoring other evidence.

Claimant again fails to point to anything specific in either the record or the ALJ's decision to corroborate his claim, and his arguments are underdeveloped and not sufficient to warrant

remand. *See U.S v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) (stating that underdeveloped arguments are waived); *Handford ex rel. I.H. v. Colvin*, No. 12 C 9173, 2014 U.S. Dist. LEXIS 3449, at *39 (N.D. Ill. 2014) (applying *Berkowitz* to reject underdeveloped arguments in Social Security appeals). As a preliminary matter, Claimant does not specify what evidence the ALJ supposedly ignored. In his opinion, the ALJ dedicated a paragraph to discussing Claimant's subjective complaints and inconsistencies within those complaints. (R. 29.) For example, the ALJ discussed Claimant's noncompliance during the relevant period and the fact that his GAF scores stayed in the 50s and 60s even when he was noncompliant with his medications. (*Id.*) In addition, the ALJ pointed to Claimant's ability to attend school, live alone, drive, and go out to eat as further inconsistencies. (*Id.*) The ALJ distinguished this from Claimant's testimony that he was unable to be around other people, finding that his capabilities demonstrated "some ability to self-direct, be around other people on at least a superficial level, and focus in order to attend classes." (*Id.*) The ALJ reasonably analyzed Claimant's subjective complaints, and Claimant does not point to evidence the ALJ overlooked in his analysis.

Claimant also contends that the ALJ ignored recent GAF scores. However, as this Court already has stated, only Claimant's GAF scores or treatment notes from the relevant period are at issue. Claimant's GAF score during the relevant period ranged from the 50s to the 60s, even when he was noncompliant with his treatments. The ALJ did not engage in improper cherry picking when he limited his analysis of Claimant's symptoms and GAF scores to the relevant time period.

The relevant inquiry here is whether Claimant was disabled prior to September 30, 2012. *See Shidler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012) ("We also note that whatever condition the claimant may be in at this hearing, the claimant must establish that he was disabled before the expiration of his insured status…to be eligible for disability insurance benefits,") The ALJ

properly limited his analysis to the time period between Claimant's alleged onset date and his date last insured. Even if Claimant suffered from PTSD when he returned from Iraq in 2008, as Claimant contends, the ALJ found that he did not have any functional limitations during the relevant time period. That Claimant's mental condition deteriorated significantly after September 30, 2012 is unfortunate but not necessarily relevant to his ability to function during the time frame at issue. Claimant has not shown that any significant functional limitations existed on or prior to September 30, 2012.

**D.     The ALJ Did Not Err in Relying on Vocational Testimony**

Finally, Claimant argues that the ALJ improperly accepted the VE's testimony without inquiring into its basis or veracity. Claimant does not find any specific fault with the numbers of jobs available in the national economy proffered by the VE. Rather, he takes issue with the ALJ's reliance on these numbers without more questioning regarding their source. [ECF No. 18], at 14.

Claimant, however, waived this argument when he failed to challenge the VE's testimony and to ask questions about the VE's numbers at the hearing. *Donahue v. Barnhart*, 279 F.3d 441, 447 (7th Cir. 2002) (holding that a claimant must raise any objections at the hearing); *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004) ("However, because [claimant's] lawyer did not question the basis for the vocational expert's testimony, purely conclusion though that testimony was, any objection to it is forfeited."); *Owens v. Berryhill*, 2018 U.S. Dist. LEXIS 112063, at *9 (N.D. Ill. 2018) ("[Claimant's] representative was given the opportunity to challenge the sources supporting the VE's opinion at the hearing but did not raise this issue there.... Accordingly, this argument is forfeited."). Claimant argues that requiring him to object at the hearing "makes no sense," but he fails to provide any citation or source as a reason he should not have to object at the hearing. [ECF No. 27], at 4-5. Claimant's counsel had the opportunity to question the VE at the

14

hearing, but he did not to do so. (R. 59.) Therefore, Claimant has waived his argument regarding the VE's job number estimates.

Claimant also takes issue with the VE's reliance on personal experience when pointing to available jobs in the national economy. In particular, Claimant disagrees with the VE's testimony regarding the type and frequency of interaction with the public, coworkers, and supervisors that Claimant could handle in a work environment. The VE testified at hearing that he had over twenty-years of experience in rehabilitation counseling, and he based his testimony in part on that experience. (R. 58.) The VE stated that the Dictionary of Occupation Titles ("DOT") does not discuss limitations on the type and frequency of interaction with the public, coworkers, and supervisors. (*Id.*) Instead, the VE relied on his own experience to find jobs that would accommodate Claimant's limitations. (*Id.*)

The Seventh Circuit has held that "[a]n ALJ can accept conflicting testimony if the vocational expert's 'experience and knowledge in a given situation exceeds that of the DOT's authors, or when the [vocational expert's] contrary testimony is based on information in other reliable publications.'" *Brown v. Colvin*, 845 F.3d 247, 255 (7th Cir. 2016) (quoting *Overman v. Astrue*, 546 F.3d 456, 464 (7th Cir. 2008)). Here, the VE's experience exceeded the scope of the DOT with regard to finding jobs that would accommodate Claimant's limitations, including the frequency and interaction with the public, coworkers, and supervisors. The VE stated that his testimony did not conflict with the DOT, but rather he pointed out the areas in which the DOT is silent and that he based his testimony on his own experience. (R. 59.) Therefore, the ALJ reasonably accepted the VE's testimony based on his personal experience.

## IV. CONCLUSION

For the reasons discussed in the Court's Memorandum Opinion and Order, Claimant's Motion for Summary Judgment [ECF No. 17] is denied. The Commissioner's Motion for Summary Judgment [ECF No. 25] is granted, and the decision of the Commissioner is affirmed.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: May 24, 2019